## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| Alphonsus Denis,<br><br>*Plaintiff*<br><br>v.<br><br>Hess Corporation,  Hess Oil New York Corp, *as successor by merger of* Hess Oil Virgin Islands Corp., Glencore Ltd., and Cosmogony II, Inc.,<br><br>*Defendants* | **1:21-CV-00177-WAL-GWC**<br><br>**Jury Trial Demanded**<br><br>**Complex Litigation Division** |

## FIRST AMENDED COMPLAINT

Plaintiff Alphonsus Denis brings this action for damages under the laws of the United States Virgin Islands, demands a trial by jury, and makes the following allegations based on information, belief, and investigation of counsel, except those allegations that pertain to Plaintiff, which are based on personal knowledge:

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff is a citizen and resident of St. Croix, United States Virgin Islands.

2.      Defendant Hess Corp. is a Delaware corporation, having its principal place of business in New York.

3.      Defendant Hess Oil New York Corp. ("HONYC") is a New York Corporation with its principal place of business in New York and on May 22, 2020 became the successor by merger of Hess Oil Virgin Islands Corp. (HOVIC), a prior U.S. Virgin Islands corporation, having its prior principal place of business in New York.

4.      Defendant Glencore Ltd. is a Swiss foreign business corporation, having its principle place of business in New York.

5.     Defendant Cosmogony II, Inc. ("Cosmogony") is the successor-in-interest to General Engineering Corporation. Cosmogony is a U.S. Virgin Islands company, having its principle place of business in the U.S. Virgin Islands. General Engineering Corporation merged with and into U&W Industrial Supply, Inc. ("U&W"), a U.S. Virgin Islands corporation. U&W later changed its name to Cosmogony. General Engineering Corporation and Cosmogony are hereinafter referred to collectively as "GEC".

6.     This Court has subject matter jurisdiction pursuant to 4 V.I.C. § 76.

7.     Venue is this District is proper pursuant to 4 V.I.C. § 78 because the conduct complained of in this Complaint was carried out in substantial part within this judicial division.

## FACTUAL ALLEGATIONS RE: THE PLAINTIFF

8.     Plaintiff worked at the oil refinery previously-owned by HOVIC on St. Croix, Virgin Islands (the "Oil Refinery").

9.     He worked at the Oil Refinery from 1992 to 1994 and in 1997.

10.     During his work at the Oil Refinery, Plaintiff worked as a laborer, painter, jackhammerer, sandblaster, and replaced insulation.

11.     In the course of his employment at the Oil Refinery, Plaintiff was exposed to dusts from asbestos containing materials ("ACM"), silica, and catalyst.

12.     Plaintiff worked at the Alumina Refinery from 1994 to 1995. During his work at the Alumina Refinery, Plaintiff worked as a miner.

13.     In the course of his employment at the Alumina Refinery, Plaintiff was exposed to bauxite ore dusts (and their consituents and waste products), caustic soda, asbestos-containing materials ("ACM"), and alumina dust.

14.     Plaintiff used no or substandard respiratory protection during his employments at the Alumina Refinery and Oil Refinery. This protection was wholly inadequate to guard against the inhalation of toxic substances like bauxite, alumina, silica, caustic, and asbestos.

15.     Plaintiff suffers from pneumoconiosis, which became evident 12/9/2018.

16.      This disease is evidenced by a chest x-ray (read by a competent NIOSH-certified B-reader) a pulmonary function test (PFT), a physical examination, and a discussion and consideration of Plaintiff's work history, among other things.

17.     Plaintiff's lung disease is characterized by shortness of breath, diminished lung capacity, and other respiratory ailments.

18.     This disease and injry are the direct and proximate result of Plaintiff's repeated exposure to various toxic substances during his work at the Alumina Refinery and the Oil Refinery.

19.     Plaintiff's injuries are current and will continue for the rest of his life. He seeks recompense for his pain and suffering; his medical bills and anticipated medical needs in the future; and the diminution in quality and enjoyment of his life.

20.     Plaintiff fears the progression of his respiratory symptoms and reasonably fears that he may develop cancer as a result of persistent exposure to toxic materials and substances.

21.     Plaintiff is also at a medically and statistically significant increased risk of developing lung cancer, mesothelioma, and other cancers.

**FACTUAL ALLEGATIONS RE: THE OIL REFINERY**

22.     HOVIC owned and operated an Oil Refinery on St. Croix from 1966 to 1998. The Oil Refinery transformed and refined crude petroleum into various useful products.

23.     At all relevant times to this action, the Oil Refinery was owned by HOVIC.

24.     At all relevant times, HOVIC was a wholly-owned subsidiary of Hess.

25.     Plaintiff worked at the Oil Refinery from 1992 to 1994 and in 1997.

26.     During his work at the Oil Refinery, Plaintiff worked as a laborer, painter, jackhammerer, sandblaster, and replaced insulation.

27.     The Oil Refinery is a very large complex of units, many of which employ hot processes to transform feedstock into a refined product.

28.     These hot processes called for the use of extensive amounts of insulation to keep the boilers, heaters, and pipelines at a very high temperature.

29.     A large percentage of the insulation used at the Oil Refinery was asbestos-containing.

30.     Many of the units at the Oil Refinery make use of catalyst to crack certain hydrocarbons into desirable components.

31.     The catalysts were made of heavy metals like nickel, molybdenum, and cobalt.

32.     During routine maintenance and turnaround, employees at the Oil Refinery would frequently handle and inhale spent catalyst.

33.     Research has shown that constant exposure to asbestos and catalyst can cause serious medical problems.

34.     Oil refiners have long understood the dangers posed by exposure to asbestos and catalyst dusts.

35.     The U.S. Federal Government has long regulated the limits of industrial exposure to thes dangerous materials, including asbestos and catalyst.

36.     The U.S. Virgin Islands has long regulated emisisons of fugitive particulate matters.

37.     Industry must take all reasonable steps to guard against the release of asbestos and catalyst dusts through sound engineering.

38.     During the course of his employment at the Oil Refinery, Plaintiff came into contact with and inhaled asbestos- and catalyst-laden dusts well in excess of the government limits as well the scientific consensus standards.

39.     Because engineering may not contain all dusting, persons in industrial settings that could be exposed to excessive dust levels must be given proper and timely warnings, training, and personal protective equipment, including respiratory protection.

40.     Government regulators have also required industrial facilities to conduct air tests to assess the concentration of particulate matter. At all relevant times, the Oil Refinery was not equipped with the appropriate equipment to measure particulate concentration. The limited testing that was conducted was substandard, and the tests failed to accord with industry and scientific best practices.

41.     Hess and HOVIC knew of the Government's exposure limits and their importance to the health of workers in industrial settings.

**FACTUAL ALLEGATIONS VIS-À-VIS THE ALUMINA REFINERY**

42.     An Alumina Refinery operated on St. Croix from the early- to mid-1960s to 2000. The Alumina Refinery refined bauxite ore into alumina (aluminum oxide).

43.     Virgin Islands Alumina Company ("VIALCO") purchased the Alumina Refinery in 1989. At that time and at all relevant times thereafter, VIALCO was the wholly-owned subsidiary of Glencore Ltd. It operated the Alumina Refinery from 1990 to 1995. Prior to operating the Alumina Refinery, VIALCO had not owned or operated any other alumina refinery. From 1990 to 1995, Glencore supplied VIALCO and the Alumina Refinery with bauxite ore.

44.     During the years that VIALCO owned and/or operated the Alumina Refinery, GEC was contracted to provide construction and maintenance services.

45.     Bauxite is a naturally occurring material comprised of hydrated aluminum oxides and aluminosilicates, iron oxides, titanium dioxide, silica, beryllium, and mixtures of other materials; including, quartz, clay minerals, gibbsite [Al(OH)], boehmite [ALO(OH)], and diaspore [ALO(OH)]. Bauxite is the principle ore of alumina (AL2O3).

46.     During the refining process, bauxite ore is, among other activities, crushed and ground,

which continuously creates large amounts of dust. In his work at the Alumina Refinery, Plaintiff was in constant contact with, and exposed to, this unrefined bauxite dust and its constituents.

47.     Caustic soda is added to the ground ore, some of which becomes airborne. In his work at the Alumina Refinery, Plaintiff was in frequent proximity to and inhaled caustic soda dust.

48.     The refinement process involves many hot processes that require the maintenance of high temperatures. To that end, the Alumina Refinery used ACM to insulate vessels, machinery, and pipe. In his work at the Alumina Refinery, Plaintiff was in frequent proximity to and inhaled ACM.

49.     The finished alumina product is a white/silver powder. The alumina is highly susceptible to becoming airborne because of the prevailing trade winds. In his work at the Alumina Refinery, Plaintiff was in frequent proximity to and inhaled alumina dust.

50.     The refinement process also generates a great deal of toxic industrial waste sometimes called "red mud". The chemical composition may include iron (III) oxide ($Fe_2O_3$), aluminum oxide ($Al_2O_3$), silicon dioxide ($SiO_2$), copper (II) oxide ($CuO$), sodium oxide ($Na_2O$), titanium dioxide ($TiO_2$), potassium oxide ($K_2O$), selenium trioxide ($Se_2O_3$), and vanadium pentoxide ($V_2O_5$), arsenic (As), lead (Pb), mercury (Hg), nickel (Ni), chromium (Cr), cadmium (Cd), as well as radioactive uranium and thorium. When red mud dries, it becomes chalky and airborne. In his work at the Alumina Refinery, Plaintiff was in frequent proximity to and inhaled red mud dust.

51.     Alumina refiners have long understood the dangers posed by exposure to bauxite ore dust, its constituent compenents and waste products (including red mud), caustic soda, ACM, and refined alumina. Research shows that exposure to these elements (or mixtures thereof) in industrial settings can cause serious medical problems, including decreased FEV1, radiographic abnormalities, increased opacities, upper and lower respiratory symptoms (shortness of breath, wheeze, chest tightness, rhinitis), pulmonary fibrosis, mixed dust pneumoconiosis, interstitial fibrosis, fibrotic lesions, parenchymal changes, lung cancer, and aluminosis.

## CAUSES OF ACTION AGAINST HESS CORP.

### Count 1 – Negligent Undertaking

52.     Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

53.     Hess is liable to Plaintiff under Section 324A of the Restatement (Second) of Torts, which articulates a sound rule for the Virgin Islands.

54.     Hess undertook to render services to HOVIC and its contractors at the Oil Refinery.

55.     In particular, Hess oversaw the construction of the St. Croix Refinery in 1965 and operated the Refinery until October 1998. During this period, Hess ran the refinery from New Jersey. Hess created and implemented policies at the refinery. These policies included the refinery's safety policies, which were created by Hess "with the express intent of being not only guidance, but operable" in the refinery. Indeed, the policies issued by Hess to HOVIC demanded compliance. And, Hess regularly scheduled safety audits to determine compliance with safety policies.

56.     Hess should have recognized the services it provided to its subsidiaries were necessary for the protection of Plaintiff, generally or in particular.

57.     Hess failed to exercise reasonable care.

58.     The failure to exercise reasonable care increased the risk of harm to Plaintiff.

59.     Hess undertook to perform a duty owed by HOVIC and/or its contractors to Plaintiff.

60.     Plaintiff suffered harm because HOVIC and/or its contractors relied on Hess to fulfill its undertaking.

61.     Plaintiff suffered harm because he relied on Hess to fulfill its undertaking.

62.     Hess directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to toxic substances, as well as the harm and damages Plaintiff has sustained as a

result of his exposure.

## Count 2 – Chattel Known to be Dangerous for Intended Use

63.     Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

64.     Hess is liable to Plaintiff under Section 388 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands.

65.     Hess supplied ACM, catalyst, and silica—"Chattels"—to its contractors and their employees at the Oil Refinery..

66.     Hess expected its contractors and their employees (including Plaintiff) to use the Chattels, as well as expected that Plaintiff could be endangered by the probable uses of those chattels

67.     Plaintiff was harmed by the Chattels supplied by Hess to HOVIC and/or its contractors and employees for use at the Oil Refinery.

68.     Hess knew or had reason to know that the Chattels are dangerous or likely to be dangerous to humans.

69.     Hess had no reason to believe that its contractors or Plaintiff would realize the dangerous condition posed by the Chattels.

70.     Hess failed to exercise reasonable care to inform HOVIC, its contractors, or Plaintiff of the dangerousness of the Chattels or the facts which make them dangerous.

71.     Hess directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to the Chattels, as well as the harm and damages Plaintiff has sustained as a result of his exposures.

## Count 3 – Chattel Unlikely to be Made Safe for Use

72.     Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

73.     Hess is liable to Plaintiff under Section 389 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands.

74.     Hess supplied ACM, catalyst, and silica—"Chattels"—to its contractors and their employees at the Oil Refinery.

75.     While Hess provided warnings and MSDS sheets to HOVIC and its contractors, those warnings and sheets went unheeded. Hess knew or should have known that its warnings and sheets were not being communicated to the workforce at the Oil Refinery.

76.     Hess knew or should have known that the Chattels were unlikely to be made reasonably safe before being put to the use at the Oil Refinery in the manner expected.

77.     Plaintiff was a foreseeable user of the Chattels, as well as endangered by the probable use of those Chattels.

78.     Plaintiff was ignorant as to the dangerous character of the Chattels and was not contributorily negligent.

79.     Hess directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to the Chattels, as well as the harm and damages Plaintiff has sustained as a result of this exposures.

**Count 4 – Chattel for Use by Person Known to be Incompetent**

80.     Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

81.     Hess is liable to Plaintiff under Section 390 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands.

82.     Hess supplied ACM, catalyst, and silica—"Chattels"—to HOVIC and its contractors and their employees at the Oil Refinery.

83.     Hess knew or had reason to know that HOVIC and/or its contractors and their employees at the Oil Refinery were using the Chattels in a manner that involved an unreasonable risk of physical harm to Plaintiff.

84.     In particular, Hess knew or had reason to know that HOVIC and/or its contractors were incompetent, as they facility lacked an adequate respiratory policy prior to the mid-1990s and ignored OSHA regulations.

85.     Hess should have expected that Plaintiff would be endangered by the use of the Chattels at the Oil Refinery.

86.     Hess directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to the Chattels, as well as the harm and damages Plaintiff has sustained as a result of his exposures.

## Count 5 – Chattel Used to Supplier's Business Purpose

87.     Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

88.     Hess is liable to Plaintiff under Section 392 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands.

89.     The Hess Refinery served Hess's business purpose.

90.     At all relevant times, Hess operated a multinational and vertically-integrated energy portfolio, consisting of on-shore and off-shore exploration and production, transportation, refinement, and marketing/selling finished product.

91.     Hess supplied ACM, catalyst, and silica—"Chattels"—to the Hess Refinery for use.

92.     Those asbestos-containing materials served Hess's business purposes because it facilitated refinement operations.

93.     The Chattels were ultimately supplied to the employees at the Hess Refinery, who

used, installed, handled, manipulated, fabricated, removed, and/or disposed of it.

94.     Hess should have expected that Plaintiff and other employees at the Alumina Refinery would be endangered by the probable use of the Chattels.

95.     Plaintiff sustained physical harm caused by the use of the Chattels.

96.     Hess failed to exercise reasonable care to make the Chattels safe for the use for which it was supplied.

97.     Hess failed to exercise reasonable care to discover the dangerous condition or chacter of the Chattels it supplied.

98.     Hess failed to inform Plaintiff or the other employees at the Hess Refinery of the discover the dangerous condition or chacter of the Chattels it supplied.

99.     Consequently, Hess directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to the Chattels, as well as the harm and damages Plaintiff sustained as a result of this exposure.

## CAUSES OF ACTION AGAINST HESS OIL NEW YORK CORP.
## (AS SUCCESSOR BY MERGER TO HOVIC)

### Count 6 – Premises Liability

100.     Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

101.     HOVIC is liable to Plaintiff as a premise in accordance with the rule articulated in *Machado v. Yacht Haven, U.S.V.I., LLC*, 61 V.I. 373 (2014).

102.     HOVIC was a legal possessor of the Oil Refinery from 1966 to 1998, and it was a possessor during Plaintiff's working years at the Oil Refinery.

103.     HOVIC had knowledge of the harmful nature of, and danger posed by ACM, silica, and catalyst at all times while Plaintiff was on the Oil Refinery premises.

104. HOVIC knew that this exposure to ACM, silica, and catalyst posed a foreseeable and unreasonable risk of harm to Plaintiff and others.

105. HOVIC had a duty to exercise reasonable care including providing Plaintiff with a safe work environment and warning Plaintiff of any dangers that it could not make safe.

106. This foreseeable harm could have been prevented if HOVIC had implemented and enforced proper safety measures at the Oil Refinery, and had also warned Plaintiff of the dangers.

107. HOVIC knew or should have known that Plaintiff would not discover or realize the danger, as HOVIC was in a superior position of power and knowledge.

108. HOVIC breached its duty by failing to use reasonable care to protect Plaintiff, by failing to warn Plaintiff of the dangers, and by failing to provide a safe work environment.

109. HOVIC's actions and failures to act include:

a. Failing to adequately monitor the concentration of ACM, silica, and catalyst in the air;

b. Failing to take appropriate safety precautions regarding to toxic, carcinogenic, hazardous, and/or irritating dusts, fumes, and other substances;

c. Failing to provide and require the wearing of protective clothing;

d. Failing to provide effective masks, respirators, and/or fresh air sources;

e. Failing to provide adequate changing rooms, showers, laundry, and other safety services for exposed workers;

f. Failing to post warning signs;

g. Failing to warn Plaintiff of the health risks associated with exposure to toxic substances, including asbestos, silica, and catalyst;

h. Failing to timely and appropriately train Plaintiff and his co-workers;

i.      Failing to timely and appropriately engage in medical surveillance of exposed persons, including Plaintiff;

j.      Failing to timely and appropriately monitor workforce exposure and health, including that of Plaintiff.

110.    HOVIC directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to ACM, silica, and catalyst, as well as the harm and damages Plaintiff has sustained as a result of this cumulative exposure.

## CAUSES OF ACTION AGAINST HESS OIL NEW YORK CORP.
### (AS SUCCESSOR BY MERGER TO HOVIC)
### AND
### VIRGIN ISLANDS INDUSTRIAL MAINTENANCE CORP.

### Count 7 – Chattel Known to be Dangerous for Intended Use

111.    Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

112.    HOVIC is  liable to Plaintiff under Section 388 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands.

113.    HOVIC supplied ACM, silica, and catalyst—"Chattels"—to its contractors and their employees at the Oil Refinery.

114.    HOVIC expected its contractors and their employees (including Plaintiff) to use the Chattels, as well as expected that Plaintiff could be endangered by the probable uses of the Chattels

115.    Plaintiff was harmed by the Chattels supplied by HOVIC to the Oil Refinery for use.

116.    HOVIC knew or had reason to know that the Chattels are dangerous or likely to be dangerous to humans.

117.    HOVIC had no reason to believe that its contractors or Plaintiff would realize the dangerous condition posed by the Chattels.

118.    HOVIC failed to exercise reasonable care to inform either its contractors or Plaintiff of the dangerousness of the Chattels or the facts which make them dangerous.

119.    HOVIC directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to the Chattels, as well as the harm and damages Plaintiff has sustained as a result of his exposures.

**Count 8 – Chattel Unlikely to be Made Safe for Use**

120.    Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

121.    HOVIC is  liable to Plaintiff under Section 389 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands.

122.    HOVIC supplied ACM, silica, and catalyst—"Chattels"—to its contractors and their employees at the Oil Refinery for use.

123.    While HOVIC provided warnings and MSDS sheets to its contractors, those warnings and sheets went unheeded. HOVIC knew or should have known that its warnings and sheets were not being communicated to the workforce at the Oil Refinery.

124.    HOVIC knew or should have known that the Chattels were unlikely to be made reasonably safe before being put to the use at the Oil Refinery in the manner expected.

125.    Plaintiff was a foreseeable user of the Chattels, as well as endangered by the probable use of those Chattels.

126.    Plaintiff was ignorant as to the dangerous character of the Chattels and was not contributorily negligent.

127.    HOVIC directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to the Chattels, as well as the harm and damages Plaintiff has sustained as a result of this exposures.

**Count 9 – Chattel for Use by Person Known to be Incompetent**

128.     Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

129.     HOVIC is  liable to Plaintiff under Section 390 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands.

130.     HOVIC supplied asbestos products and catalyst—"Chattels"—to its contractors and their employees at the Oil Refinery.

131.     HOVIC knew or had reason to know that its contractors and their employees at the Oil Refinery were using the Chattels in a manner that posed an unreasonable risk of physical harm to Plaintiff.

132.     In particular, HOVIC knew or had reason to know that its contractors were incompetent, as they facility lacked an adequate respiratory policy prior to the mid-1990s and ignored OSHA regulations.

133.     HOVIC should have expected that Plaintiff would be endangered by the use of the Chattels at the Oil Refinery.

134.     HOVIC directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to the Chattels, as well as the harm and damages Plaintiff has sustained as a result of his exposures.

**Count 10 – Chattel Used to Supplier's Business Purpose**

135.     Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

136.     HOVIC is  liable to Plaintiff under Section 392 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands.

137.     The Oil Refinery served HOVIC's business purpose.

138.     HOVIC supplied ACM, silica, and catalyst—"Chattels"—to the Hess Refinery for use, which served HOVIC's business purpose.

139.     The Chattels were ultimately supplied to the employees at the Hess Refinery, who used, installed, handled, manipulated, fabricated, removed, and/or disposed of it.

140.     HOVIC should have expected that Plaintiff and other employees at the Oil Refinery would be endangered by the probable use of the Chattels.

141.     Plaintiff sustained physical harm caused by the use of the Chattels.

142.     HOVIC failed to exercise reasonable care to make the Chattels safe for the use for which they were supplied.

143.     HOVIC failed to exercise reasonable care to discover the dangerous condition or chacter of the Chattels it supplied.

144.     HOVIC failed to inform Plaintiff or the other employees at the Hess Refinery of the discover the dangerous condition or chacter of the Chattels it supplied.

145.     Consequently, HOVIC directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to the Chattels, as well as the harm and damages Plaintiff sustained as a result of this exposure.

### CAUSES OF ACTION AGAINST GLENCORE LTD.

### Count 11 – Chattel Known to be Dangerous for Intended Use

146.     Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein. Glencore is liable to Plaintiff under Section 388 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands.

147.     Glencore supplied bauxite ore—a chattel—to the Aluminum Refinery for use from 1990 to 1995. It expect the Aluminum Refinery and Plaintiff to use the bauxite ore, as well as expect that Plaintiff could be endangered by the probable uses of bauxite ore—namely, refinement.

148.     Glencore knew or had reason to know that bauxite ore, bauxite dusts and its constituents  is dangerous or likely to be dangerous during the refinement process. It had no reason to believe that the Aluminum Refinery or Plaintiff would realize the dangerous condition of bauxite ore, bauxite dusts and its constituents. And it failed to exercise reasonable care to inform either the Aluminum Refinery or Plaintiff of the dangerousness of bauxite ore, bauxite dusts and its constituents or the facts which make bauxite ore, bauxite dusts and its constituents likely to be dangerous.

149.     Plaintiff was harmed by the bauxite ore supplied by Glencore to the Aluminum Refinery.

150.     Glencore directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to bauxite dusts and its constituents, as well as the harm and damages Plaintiff sustained as a result of this exposure.

**Count 12 – Chattel Unlikely to be Made Safe for Use**

151.     Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein. Glencore is liable to Plaintiff under Section 389 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands.

152.     If Glencore provided warnings and MSDS sheets to the Aluminum Refinery, those warnings and MSDS sheets went unheeded. Glencore knew or should have known that any warnings and sheets it may have provided were not being communicated to the workforce at the Aluminum Refinery.

153.     Glencore knew or should have known that the bauxite ore was unlikely to be made reasonably safe before being put to the use Glencore should expect it to be put—namely, refinement into aluminum powder.

154. Plaintiff was a foreseeable user of the chattel, as well as endangered by the probable use of the chattel. He was ignorant as to the dangerous character of bauxite ore, its hazardous constitutents, and its waste products, and he was not contributorily negligent.

155. Glencore directly and proximately caused, and is legally responsible and liable for, the harm and damages caused by Plaintiff's exposure to bauxite ore, its hazardous constituents, its waste products, and the refined alumina derived therefrom.

## Count 13 – Chattel for Use by Person Known to be Incompetent

156. Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein. Glencore is liable to Plaintiff under Section 390 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands.

157. Glencore knew or had reason to know that the owners and operators of the Alumina Refinery were using the bauxite ore supplied by Glencore in a manner that involved an unreasonable risk of physical harm to Plaintiff. It should have expected that Plaintiff would be endangered by the use of bauxite ore at the Alumina Refinery.

158. In particular, Glencore knew or had reason to know that the Alumina Refinery owners and operators were incompetent. VIALCO had not previously owned or operated an alumina refinery prior to 1990 when it began operations in St. Croix. It failed to implement the necessary engineering controls to minimize worker exposure to bauxite, its constituent components, and waste products. It lacked an adequate respiratory policy to guard against the inhalation of bauxite dust, its constituent components, and waste products. It had a substandard safety department that was understaffed and/or not properly staffed by personnel with the necessary background and experience. It and its management failed to understand and/or was unconcerned with the dangers associated with bauxite dust and its constituents inhalation. It failed to implement and/or implemented substandard air monitoring or testing protocols to measure fugitive and/or bauxite dusts. And it failed to abide

applicable OSHA and/or MSHA regulations regarding handling and processing bauxite ore and/or its constituent components and waste products.

159.    Glencore directly and proximately caused, and is legally responsible and liable for, the harm and damages caused by Plaintiff's exposure to bauxite ore, its hazardous constituents, its waste products, and the refined alumina derived therefrom.

**Count 14 – Chattel Used to Supplier's Business Purpose**

160.    Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein. Glencore is liable to Plaintiff under Section 392 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands.

161.    The Alumina Refinery served Glencore's business purpose during the years of VIALCO's ownership and operation. At all relevant times, Glencore operated a multinational and vertically-integrated alumina refinement portfolio, consisting of mining, shipping, refinement, smelting, and marketing/selling.  Those bauxite ore served Glencore's business purposes because it was integral part of the start-to-finish operation.

162.    The bauxite ore as ultimately supplied to the Alumina Refinery, where it was crushed, ground, liquified, and disposed of. Glencore should have expected that Plaintiff and other employees at the Alumina Refinery would be endangered by the probable use of the bauxite ore and bauxite dusts, its hazardous constituents, its waste products, and the refined alumina derived therefrom.

163.    Glencore failed to exercise reasonable care to make the bauxite ore safe for the use for which it was supplied. It failed to exercise reasonable care to discover the dangerous condition or chacter of the bauxite ore.it supplied. And it failed to inform Plaintiff or the other employees at the Alumina Refinery of the discover the dangerous condition or chacter of the bauxite ore it supplied.

164.     Glencore directly and proximately caused, and is legally responsible and liable for, the harm and damages caused by Plaintiff's exposure to bauxite ore, its hazardous constituents, its waste products, and the refined alumina derived therefrom.

## Count 15 – Negligent Undertaking

165.     Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein. Glencore is liable to Plaintiff under Section 324A of the Restatement (Second) of Torts, which articulates a sound rule for the Virgin Islands.

166.     Glencore undertook to render services to its subsidiary VIALCO. It should have recognized the services it provided to VIALCO were necessary for the protection of Plaintiff, generally or in particular.

167.     Glencore failed to exercise reasonable care, which increased the risk of harm to Plaintiff. It undertook to perform a duty owed by VIALCO to Plaintiff.

168.     Plaintiff suffered harm because VIALCO relied on Glencore to fulfill its undertaking. And he suffered harm because he relied on Glencore to fulfill its undertaking.

169.     Glencore directly and proximately caused, and is legally responsible and liable for, the harm and damages caused by Plaintiff's exposure to bauxite ore, its hazardous constituents, its waste products, the refined alumina derived therefrom, caustic fumes, and asbestos.

### CAUSES OF ACTION AGAINST COSMOGONY II, INC. AS SUCCESSOR-IN-INTEREST TO GENERAL ENGINEERING CORP.

## Count 16 – Negligence

170.     Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein. GEC is liable to Plaintiff as it acted negligently.

171.     GEC's services installing, removing, and replacing ACM, which work resulted in the release of asbestos fibers into the air.

172.     GEC was negligent insofar as it failed to take adequate precautions to guard against and warn of the consequences these releases. Among other things, GEC failed to adequately train its employees on how to recognize and properly dispose of ACM. It failed to adequately warn its employees and those in the vicinity of the dangers of ACM or regarding the use of appropriate PPE.

173.     Further, GEC was negligent in its provision of maintenance work. It failed to adequately maintain the various mechanical components at the Alumina Refinery. In particular, the machinery used to convey and pulverize bauxite ore was constantly in poor working order, and as a result, fugitive bauxite emissions were frequent.

174.     Both instances of negligent presented forseeable risks of harm—namely, that Plaintiff, his co-workers, and others would come into contact with and inhale an inordinate amount of ACM and bauxite dust.

175.     GEC owed a duty of reasonable care under the circumstances. In this specific case, its duty was to perform its construction and maintenance duties with the due care necessary for a refinery contractor, with the understanding that the materials at the Alumina Refinery were dangerous and required special precautions.

176.     However, GEC violated its duty of reasonable care as detailed above.

177.     GEC directly and proximately caused, and is legally responsible and liable for, the harm and damages caused by Plaintiff's exposure to bauxite ore, its hazardous constituents, its waste products, and asbestos.

## NOTICE OF PUNITIVE DAMAGES

178.     Plaintiff seeks punitive damages against Defendants.

179.     Defendants' respective failures as described herein were intentional and/or done or with a willful or reckless disgregard of the the rights of others, including the plaintiff.

180.     An award of punitive damages is warranted to punish the defendants, deter similar conduct by others, encourage others harmed to step forward, and to additionally compensate Plaintiff for the egregious conduct to which he was subjected.

### JURY TRIAL DEMANDED

181.     Plaintiff demands a trial by jury, pursuant to 5 V.I.C. § 358 and Rule 38(b) of the Virgin Islands Rules Civil Procedure, of all issues so triable.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests:

a.     After trial by jury, he be awarded full monetary damages afforded by law, including punitive damages;

b.     He be awarded pretrial interest from the date of the initial Complaint through final judgment;

c.     He be awarded his costs; and

d.     The Court grant such additional relief as may be deemed just and proper.

**DATED:**    April 28, 2021                Respectfully submitted,

/s/ C. Jacob Gower

Korey A. Nelson, Esq. (V.I. Bar No. 2012)
C. Jacob Gower, Esq. (V.I. Bar No. 2103)
BURNS CHAREST LLP
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765
knelson@burnscharest.com
jgower@burnscharest.com

Warren T. Burns, Esq. (V.I. Bar No. 2004)
Daniel H. Charest, Esq. (V.I. Bar No. 2020)
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
wburns@burnscharest.com
dcharest@burnscharest.com

J. Russell B. Pate, Esq. (V.I. Bar No. 1124)
THE PATE LAW FIRM
P.O. Box 890
St. Thomas, USVI 00804
Telephone: (340) 777-7283
Facsimile: (888) 889-1132
pate@sunlawvi.com